UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY MCKINLEY,<br><br>                        Plaintiff,<br><br>v.<br><br>A. MILLER, et al.,<br><br>                        Defendants. | Case No.: 15cv228-WQH(RBB)<br><br>**REPORT AND RECOMMENDATION FOR AN ORDER (1) GRANTING [DEFENDANT'S] MOTION TO DISMISS CLAIMS AGAINST DEFENDANT MILLER [ECF NO. 33]; AND (2) ISSUING AND ORDER TO SHOW CAUSE WHY DEFENDANTS JANDA AND PREMDAS SHOULD NOT BE DISMISSED.** |

On July 24, 2017, Plaintiff Terry McKinley, a state prisoner proceeding pro se and in forma pauperis, filed a First Amended Complaint ("Amended Complaint"), the operative pleading in this case, pursuant to 42 U.S.C. §1983. (Am. Compl., ECF No. 22.)[1] Plaintiff alleges that while he was incarcerated at Centinela State Prison

---

[1] The Court will cite to documents as paginated on the electronic case filing system.

1

("Centinela"), Defendants Warden Miller, Deputy Warden Janda, and Correctional Officers Hugie and Premdas violated his rights under the First and Eighth Amendments. (Id. at 1-6.) On December 4, 2017, Defendant Miller, one of the two Defendants served with Plaintiff's Amended Complaint, filed a Motion to Dismiss First Amended Complaint (the "Motion to Dismiss") [ECF No. 33].[2] McKinley's Opposition to the Motion to Dismiss (the "Opposition") was filed nunc pro tunc to January 2, 2018 [ECF No. 35]. Defendant did not file a reply.

The Court has reviewed the Amended Complaint and exhibits, the Motion to Dismiss, and the Opposition. For the reasons discussed below, Defendant Miller's Motion to Dismiss [ECF No. 33] should be **GRANTED with leave to amend.**

## I. BACKGROUND

The events forming the basis of Plaintiff's Amended Complaint occurred in 2013 and 2014, while Plaintiff was incarcerated at Centinela. (See Am. Compl. 1-6, ECF No. 33.) McKinley alleges that his building was designated for prison's general population but housed "unclassified" inmates. (Id. at 3.) He contends Centinela "either did not have or did no utilize a designated unit or group of cells for unclassified [inmates,]" and his cell was "a revolving door for unclassified transitional" inmates. (Id.) Plaintiff claims that mixing inmates with different classifications subjected general population inmates "to the unknown variables" brought by unclassified inmates, and violated the policies of the California Department of Corrections and Rehabilitation ("CDCR"). (Id.)

On March 25, 2013, Plaintiff's cell was searched, and marijuana was discovered in the clothing stored on the unoccupied upper bunk of the cell. (Id.) McKinley alleges that the "area and the clothing" where the drugs were found were used by many "unclassified" inmates, an "unclassified" inmate was housed with him and departed several days before the cell search, and McKinley "never wore or possessed" the

---

[2] Although counsel identifies himself as the attorney of Defendants Miller and Hugie, the arguments to dismiss are only made on behalf of Defendant Miller.

clothing.  (Id. at 3-4.)  Plaintiff was placed in administrative segregation and received a rules violation report.  (Id. at 4.)

On April 15, 2013, McKinley submitted a CDC-602 Inmate/Parolee Appeal Form stating that on March 25, 2013, he was incorrectly placed in administrative segregation after his cell had been searched and drugs were found in the clothing left on the unoccupied upper bunk of the cell.  (Id. at 11-12.)  He claimed he had no knowledge of the drugs because they belonged to an inmate who had been previously housed in his cell.  (See id. at 12.)  Plaintiff alleged that the prison staff was negligent by housing together unclassified and general population inmates, which led to the contraband being found in the cell.  (Id. at 11-12.)  He requested to be released from administrative segregation and to have the rules violation report dismissed.  (Id. at 11.)

On July 25, 2013, Plaintiff's charge was reduced from drug trafficking to possession of a controlled substance, and Plaintiff was released to the general population.  (Id. at 5.)  McKinley contends that several inmates informed him that prison staff labeled him a "snitch;" he claims the "rumor could have only been generated by correction[al] staff since no [inmate] would have been privy to the contents of [inmate] appeals."  (Id.)  Plaintiff asserts that Correctional Officers Hugie and Premdas slandered and defamed him "in retaliation for:  1) exposing Centinela State Prison's underground policy of housing [inmates] together of different classification status, and 2) the filing of numerous 602's."  (Id.)  On August 17, 2013, Plaintiff asked Hugie "what was the deal with him spreading false rumors [about Plaintiff,]" and the officer responded that "[i]t came from high up."  (Id.)

McKinley alleges he "received hard looks and intimidating stares" from inmates and staff, and "experienced different forms of harassment from staff, from lost property to missing documents supporting the many appeals he had filed."  (Id.)  On September 14, 2013, he requested a single cell, but his accommodation request was denied.  (Id. at 5-6.)

///

In July 2014, Plaintiff was placed in a cell with a "documented informant" and was asked by other inmates to psychically harm his cellmate. (Id. at 6.) Soon after McKinley refused to carry out the "hit," he was attacked by inmates on the recreation yard. (Id.) He suffered a concussion, a loss of memory and "mental acuity," and has difficulties retaining information. (Id.) McKinley contends the attack was a result of "the malicious and vindictive rumor spreading carried out by the administration, namely [Correctional Officers] Hugie and Premdas; ordered from 'high up.'" (Id.)

Plaintiff alleges violations of his Eighth Amendment right to be free from cruel and unusual punishment and First Amendment right to seek redress. (Id. at 3-6.) McKinley seeks injunctive relief and $8,000,000 in damages. (Id. at 9.)

## II. LEGAL STANDARDS

### A. Standards Applicable to Pro Se Litigants

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992) (citation omitted). In giving liberal interpretation to a pro se civil rights complaint, courts "may not supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id.; see also Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." Jones, 733 F.2d at 649 (citation omitted) (internal quotation marks omitted).

Nevertheless, the court must give a pro se litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of

other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)). Thus, before a pro se civil rights complaint may be dismissed, the court is required to provide the plaintiff with a statement explaining the complaint's deficiencies. Karim-Panahi, 839 F.2d at 623-24 (citation omitted). But where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate. See James v. Giles, 221 F.3d 1074, 1077 (9th Cir. 2000).

**B.     Motions to Dismiss for Failure to State a Claim**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. See Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 633 (1999). A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court accepts as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and construes the complaint in the light most favorable to the plaintiff. Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (citing Karam v. City of Burbank, 352 F.3d 1188, 1192 (9th Cir. 2003)); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986) (citation omitted).

The court does not look at whether the "plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005) (citation omitted); see also Bell Atlantic Corp., 550 U.S. at 563 n.8. A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); see also Cholla Ready Mix, Inc., 382 F.3d at 973 (stating that on a Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged" (quoting Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994))). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

In addition, when resolving a motion to dismiss for failure to state a claim, courts may not generally consider materials outside of the pleadings. Schneider v. California Dep't of Corrs., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider, 151 F.3d at 1197 n.1. This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6). Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993)). "When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [is] proper . . . ." Parks Sch. of Bus., Inc., 51 F.3d at 1484 (citation omitted).

**C.     Stating a Claim Under 42 U.S.C. § 1983**

To state a claim under § 1983, the plaintiff must allege facts sufficient to show that (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C.A. § 1983 (West 2012); Shah v. Cty. of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

/ / /

6

15cv228-WQH(RBB)

### III.   DISCUSSION

Defendant Miller argues in the Motion to Dismiss that Plaintiff's Amended Complaint fails to state a claim against her. (Mot. Dismiss Attach. #1 Mem. P. & A. 1, 3-4, ECF No. 33.) Miller contends that McKinley only alleges that she is liable for her subordinates' conduct, and the Amended Complaint does not contain any allegations that Miller was personally involved in any of the alleged misconduct against McKinley. (Id. at 3-4.) Defendant further asserts that the Amended Complaint does not contain any allegations that tie the warden to specific actions against Plaintiff. (Id. at 1, 4.)

Plaintiff asserts in his Opposition[3] that Warden Miller (1) "failed to remedy the wrongs after being informed of her staff's violation of plaintiff's rights through CDCR-602," (2) "was grossly negligent in supervising her subordinates when the wrongful acts were committed," and (3) "exhibited deliberate indifference to plaintiff's rights by failing to act on the information provided by the plaintiff indicating unconstitutional acts were occurring." (Opp'n 2-3, ECF No. 35.) McKinley claims Miller was aware of his complaints about housing but disregarded them, evidencing the warden's deliberate indifference. (Id. at 2-3.) Also, Defendant Miller failed to protect the Plaintiff after he was released from administrative segregation, resulting "in retaliatory acts set in motion by those 'higher up' in the administration/custody staff's chain of command." (Id. at 3.) McKinley maintains that Correctional Officer Hugie's statement that a directive to label McKinley a "snitch" came from "higher up," and this implicates Warden Miller, who "along with those directly under her authority, represent the 'higher up' entity" authorized to "order the release of sensitive information . . . detrimental to [McKinley's] physical safety." (Id. at 2.)

///

---

[3] Plaintiff's Opposition contains a "declaration" from Keith A. Chambers stating that he "prepared" the Opposition because Plaintiff is "unable to adequately do so himself due to his injuries." (See Opp'n 3, ECF No. 35.) Chambers claims that he is neither an attorney nor a party to this suit. (Id.)

7

15cv228-WQH(RBB)

A.  **Eighth Amendment Claim**

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). The Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" Id. at 33 (quoting DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 200 (1989)). Therefore, a plaintiff has a right to be protected from violence while in custody. Farmer v. Brennan, 511 U.S. 825, 833 (1994); Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). "Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir. 1982) (citations omitted), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). When the state takes a person into custody, the Constitution imposes a duty to assume some responsibility for his safety and well-being. DeShaney, 489 U.S. at 199-200.

To establish an Eighth Amendment violation, a plaintiff must show that the defendant acted with deliberate indifference to a substantial risk of serious harm to the prisoner's safety. Farmer, 511 U.S. at 834; see also Jeffers v. Gomez, 267 F.3d 895, 913 (9th Cir. 2001) ("A prison official is deliberately indifferent to a substantial risk of serious harm to inmates if that official is subjectively aware of the risk and does nothing to prevent the resulting harm."). The prison official is only liable when two requirements are met; one is objective, and the other is subjective. Farmer, 511 U.S. at 834, 838; see also Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009). The purported violation must be objectively "sufficiently serious." Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The prison official must also subjectively "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." Id. at 837.

"First, the inmate must show that the prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (footnote omitted) (citing Farmer, 511 U.S. at 837). This may be

satisfied if the prisoner establishes that the risk posed by the violation was "obvious." Id. (citations omitted). A plaintiff need not show that an "individual prison official had specific knowledge that harsh treatment of a particular inmate, in particular circumstances, would have a certain outcome." Id. at 1151. "Rather, [courts] measure what is 'obvious' in light of reason and the basic general knowledge that a prison official may be presumed to have obtained regarding the type of deprivation involved." Id. (citing Farmer, 511 U.S. at 842). "Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." Id. at 1150-51 (footnote omitted) (citing Farmer, 511 U.S. at 844).

A plaintiff may state an Eighth Amendment claim for deliberate indifference against a supervisor based on the supervisor's knowledge of, and acquiescence in, unconstitutional conduct by his or her subordinates. Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Id. (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Id. at 1208 (quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998)).

McKinley alleges that "[i]n [Miller's] position as warden, she was responsible for the actions of the officers working under her authority[,]" and "for the training and lack thereof, as well as the results of the actions of those officers." (Am. Compl. 2, ECF No. 22). The only other reference to Miller in the Amended Complaint is that "the warden and her staff" authorized an allegedly flawed policy at Centinela. (Id. at 4.) Supervisory liability may exist if officials implement a policy that "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." Hansen,

885 F.2d at 646 (citation omitted). The allegations against Warden Miller are general and conclusory, and they do not describe specific wrongdoing by Miller. McKinley neither clearly articulates the allegedly flawed policy that Miller created or implemented, nor describes how the policy served as the moving force behind violation of Plaintiff's constitutional rights. See Hydrick v. Hunter, 669 F.3d 937, 942 (9th Cir. 2012) (holding that plaintiff failed to state a claim where he failed to allege the specific policy defendants implemented that led to constitutional violations); Gregory v. Clark, No. 1:11–cv–00151 JLT (PC), 2012 WL 6697955, at *4 (E.D. Cal. Dec. 21, 2012) (holding that plaintiff failed to state a claim based on supervisory liability, where he did not identify the policy, describe the problematic content, and explain how the policy was the moving force for the purported Eighth Amendment violations). The Amended Complaint also does not allege concrete facts showing that Warden Miller improperly supervised Centinela's stuff, acquiesced in their conduct, or acted with a reckless or callous indifference to Plaintiff's rights. See Starr, 652 F.3d at 1208 (citation omitted) ("'[A]cquiescence or culpable indifference' may suffice to show that a supervisor 'personally played a role in the alleged constitutional violations.'").

An allegation that a prison official called a prisoner a "snitch" in the presence of other inmates may sufficiently state a claim for violation of a prisoner's Eighth Amendment right to be protected from violence in custody. See Valandingham, 866 F.2d at 1138; see also Quinn v. Singh, No. 11–CV–1085–DMS (JMA), 2012 WL 3868014, at *4 (S.D. Cal. July 27, 2012). In this case, however, McKinley's allegations against Warden Miller are speculative and conclusory. Other than vaguely referencing a "higher" authority who directed Correctional Officers Hugie and Premdas to label Plaintiff a "snitch," (see Am. Compl. 6, ECF No. 33), McKinley does not assert that Warden Miller knew about the alleged misconduct, was directly involved in or responsible for the misconduct, or that her actions created a risk of serious harm to Plaintiff, (see id.).

///

The Amended Complaint does not describe what actions Defendant Miller took or failed to take that caused the alleged constitutional violations. It also does not state any specific facts suggesting a causal connection between Miller's actions and the injury to Plaintiff. McKinley therefore fails to allege sufficient personal involvement of Defendant Miller or a causal connection between Miller's actions and the alleged constitutional injury. See Starr, 652 F.3d at 1207; see also Hamilton v. Hurtado, Civil No. 12cv1940 JAH (RBB), 2013 WL 3964755, at *12 (S.D. Cal. July 31, 2013) (citing Ashcroft, 556 U.S. at 678) ("The requisite causal connection cannot be reasonably inferred from [plaintiff's] generalized contentions."); Henry v. Sanchez, 923 F. Supp. 1266, 1272 (C.D. Cal. 1996) ("A supervisory official, such as a warden, may be liable under Section 1983 only if he was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.").

The Court **RECOMMENDS** that the Motion to Dismiss the Eighth Amendment claim against Defendant Miller be **GRANTED**. Because it is unclear whether Plaintiff could amend to allege facts sufficient to state an Eighth Amendment claim against Miller, Plaintiff should be given leave to amend. See Lopez, 203 F.3d at 1127.

### B. First Amendment Claim

McKinley alleges a violation of his First Amendment right to seek redress. (See Am. Compl. 5-6, ECF No. 22.) "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). "[P]risoners have a First Amendment right to file prison grievances." Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (citations omitted). The Constitution provides protections from deliberate retaliation by government officials for an individual's exercise of First Amendment rights. See Vignolo v. Miller, 120 F.3d 1075, 1077-78 (9th Cir. 1997); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Because retaliation by prison officials may chill an inmate's exercise of legitimate First

Amendment rights, retaliatory conduct is actionable even if it would not otherwise rise to the level of a constitutional violation. See Davis v. Powell, 901 F. Supp. 2d 1196, 1213 (S.D. Cal. 2012) (citing Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989)). Yet, retaliation claims are reviewed with particular care because they are prone to abuse by prisoners. Id. (citing Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996); Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995)).

A plaintiff suing prison officials pursuant to § 1983 for retaliation must allege sufficient facts that show that (1) "the retaliated-against conduct is protected," (2) the "defendant took adverse action against plaintiff," (3) there is a "causal connection between the adverse action and the protected conduct," (4) the act "would chill or silence a person of ordinary firmness," and (5) the conduct does not further a legitimate penological interest. See Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citations omitted). A plaintiff can allege retaliatory intent with a time line of events from which retaliation can be inferred. See id. (citations omitted). If the plaintiff's exercise of his constitutional rights was not chilled (factor four), he must allege that the defendant's actions caused him to suffer more than minimal harm. See Rhodes v. Robinson, 408 F.3d 559, 567-68 n.11 (9th Cir. 2005). But see Mendocino Envtl. Ctr. v. Mendocino Cty., 192 F.3d 1283, 1300 (9th Cir. 1999). The test is objective–whether an official's acts would "chill or silence a person of ordinary firmness from future First Amendment activities." Mendocino Envtl. Ctr., 192 F.3d at 1300 (citation omitted).

McKinley states that in "[Miller's] position as warden, she was responsible for the actions of the officers working under her authority[,]" and "for [their] training and lack thereof, as well as the results of the actions of those officers." (Am. Compl. 2, ECF No. 22.) In his First Amendment claim, Plaintiff does not mention Warden Miller. (See id. at 5-6.) McKinley asserts that "he had been labeled a 'snitch' by staff due to his 602 appeal on the drug possession charge[,]" and Correctional Officers Hugie and Premdas slandered and defamed him "in retaliation for 1) exposing Centinela State Prison's underground

12

15cv228-WQH(RBB)

policy of housing [inmates] together of different classification statuses, and 2) the filing of numerous 602's." (Id. at 5.)

McKinley does not sufficiently allege a First Amendment claim against Defendant Miller. (See id. at 5-6.) To the extent Plaintiff claims that Warden Miller is responsible for the violation of McKinley's First Amendment rights because of her supervisory position over Centinela's correctional officers, the pleading does not allege Miller personally participated in retaliatory conduct. See id.; see also Rhodes, 408 F.3d at 567-68 (requiring "[a]n assertion that a state actor took some adverse action against an inmate"). While McKinley generally states that Warden Miller established policies and regulations at Centinela, he does not provide any facts showing that Miller instituted specific policies or regulations in retaliation for McKinley's filing of prison grievances. See Wayne v. Leal, No. 07 CV 1605 JM (BLM), 2009 WL 2406299, at *6 (S.D. Cal. Aug. 4, 2009) ("[A]lthough Plaintiff makes a general claim of retaliation, he fails to articulate exactly what action was taken in retaliation against him and by which Defendants.") (citation omitted).

Further, if Plaintiff is speculating that Defendant Miller violated McKinley's First Amendment rights because prison staff labeled him a "snitch" in retaliation for Plaintiff's filing of prison grievances, the claim is unsupported by the facts alleged in the Amended Complaint. (See Am. Compl. 5, ECF No. 22); see also Ashcroft, 556 U.S. at 679 (holding that conclusions must be supported by factual allegations); Clegg, 18 F.3d at 754-55 (stating that courts need not accept conclusory allegations as true if they cannot reasonably be drawn from the facts alleged). Plaintiff fails to plausibly allege that Defendant's Miller's actions or inactions chilled McKinley's constitutional rights or that they did not further a legitimate penological interest. See Watison, 668 F.3d at 1114.

The Court therefore **RECOMMENDS** that the Motion to Dismiss the First Amendment claim against Defendant Miller be **GRANTED**. See Hamilton, 2013 WL 3964755, at *4, *11 (granting motion to dismiss plaintiff's First Amendment claim against defendants Secretary of the CDCR and the warden of plaintiff's prison, where

13

plaintiff alleged that defendants established prison policies, practices, or customs, but failed to allege facts showing that defendants instituted policies in retaliation for his prison grievances). It is unclear whether McKinley could amend to allege facts sufficient to state a First Amendment claim against Warden Miller, and McKinley should therefore be given leave to amend. See Lopez, 203 F.3d at 1127.

C. **Unserved Defendants**

Plaintiff's Amended Complaint named the following four Defendants: Miller, Janda, Hugie, and Premdas. (See Am. Compl. 1, ECF No. 22.) To date, only Defendants Miller and Hugie have been served. (See Mot. Dismiss Attach. #1 Mem. P. & A. 2, ECF No. 33.) Rule 4(m) of the Federal Rules of Civil Procedure imposes the following time limit for service of the complaint and summons in a civil case: "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Nonetheless, the Court must extend the 90–day time period for an "appropriate period" if service of process if the plaintiff can show "good cause" why service was not made within that time. Id.; see also S.D. Cal. Civ. L.R. 4.1(a); Efaw v. Williams, 473 F.3d 1038, 1040 (9th Cir. 2007) (same).

"Whether good cause exists is determined on a case-by-case basis." Oyama v. Sheehan (In re Sheehan), 253 F.3d 507, 512 (9th Cir. 2001). "At a minimum, 'good cause' means excusable neglect." Wilson v. Kelly, Police Officer ID No. 6540, Civil No. 11–CV–2296 LAB(RBB), 2013 WL 3864337, at *10 (S.D. Cal. Mar. 7, 2013) (quoting Boudette v. Barnette, 923 F.2d 754, 756 (9th Cir. 1991)). Good cause may exist where a plaintiff attempted to serve a defendant, but has not yet completed service; was confused about the requirements for service of process; or was prevented from serving a defendant because of events outside of his control. See Wei v. State of Hawaii, 763 F.2d 370, 372 (9th Cir. 1985) (applying the good cause standard in Rule 4(j) which was replaced by Rule 4(m) in 1993). "Courts have discretion under Rule 4(m), absent a showing of good

cause, to extend the time for service or to dismiss the action without prejudice." In re Sheehan, 253 F.3d at 513 (citation omitted); see also Efaw, 473 F.3d at 1040 (finding that "district court abused its discretion in denying Defendants' motion for dismissal based on Plaintiff's failure to comply with Rule 4's service requirements[]"). In deciding whether to grant a discretionary extension of time, "a district court may consider factors 'like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service.'" Efaw, 473 F.3d at 1041 (citation omitted).

McKinley had 90 days from July 24, 2017, the date the First Amended Complaint was filed [ECF No. 22], to serve Janda and Premdas. See Fed. R. Civ. P. 4(m). On August 30, 2017, the Clerk of the Court issued a summons on the Amended Complaint in this case and sent it to Plaintiff along with a blank U.S. Marshal Form 285 for each Defendant [ECF No. 26]. McKinley wrote a letter to the Court on September 23, 2017, stating that he had received the order allowing him to proceed in forma pauperis and had followed the instructions accompanying the order [ECF No. 28]. The docket shows that the summons and the Amended Complaint were mailed to Defendants Miller and Hugie on October 19, 2017 [ECF Nos. 29, 30]. Both Miller and Hugie waived service on November 7, 2017 [ECF Nos. 31, 32].

In the Motion to Dismiss, Defendant Miller noted that the other two Defendants had not been served, (see Mot. Dismiss Attach. #1 Mem. P. & A. 2, ECF No. 33), and Plaintiff was therefore put on notice that he failed to properly serve the remaining two Defendants. McKinley, however, has not requested an extension of time to serve the Amended Complaint. More than eight months have passed since its filing, and proper service on the remaining two Defendants still has not been made. The Court therefore **RECOMMENDS** that the Court issue an **ORDER TO SHOW CAUSE** why Defendants Janda and Premdas should not be dismissed for failure to serve them within the time limits set forth in the Federal Rule of Civil Procedure 4(m).

///

///

## VI. CONCLUSION AND RECOMMENDATION

For the reasons discussed above **IT IS HEREBY RECOMMENDED** that the District Court issue an order **GRANTING with leave to amend** the Motion to Dismiss claims against Defendant Miller [ECF No. 33]. The Court further **RECOMMENDS** that the District Court issue an **ORDER TO SHOW CAUSE** why Defendants Janda and Premdas should not be dismissed for failure to serve them within the time limits set forth in the Federal Rule of Civil Procedure 4(m).

This Report and Recommendation will be submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **May 21, 2018**. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before **June 4, 2018**.

The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: April 20, 2018

*/s/ Ruben Brooks*
Hon. Ruben B. Brooks
United States Magistrate Judge

16

15cv228-WQH(RBB)