UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY McKINLEY,<br>CDCR #C-94117<br><br>         Plaintiff,<br><br>v.<br><br>J.G. JANDA and B. HUGIE,<br><br>         Defendants. | Case No.: 15cv0228-WQH (RBB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 56) |

Plaintiff Terry McKinley, a state prisoner currently housed at the California Health Care Facility in Stockton, California, is proceeding *pro se* and *in forma pauperis* with a First Amended Complaint ("FAC") pursuant to 42 U.S.C. § 1983. (ECF No. 22.) He claims in count one that while incarcerated at Centinela State Prison ("Centinela") in Imperial, California, he was subject to cruel and unusual punishment in violation of the Eighth Amendment as a result of a Centinela policy of housing general population inmates like himself with unclassified transitional inmates in violation of a California Department of Corrections and Rehabilitation ("CDCR") policy precluding such housing. (*Id*. at 3-4.[1]) He claims the policy caused him to be placed in administrative segregation for four months and lose 121 days of custody credits as a result of being found guilty of a prison disciplinary

---

[1] Cited page numbers are those assigned by the Electronic Case Filing ("ECF") system.

infraction for possession of marijuana belonging to an inmate who would not have been housed in his cell but for the violation of the housing policy. (*Id*.) In count two he claims his Eighth Amendment right to be free from cruel and unusual punishment and his First Amendment right to petition for redress of grievances were violated when he was assaulted by other inmates after prison staff labeled him a "snitch" in retaliation for filing inmate grievances challenging the housing policy and his disciplinary infraction. (*Id*. at 5-6.)

Currently pending is a Motion for Summary Judgment by Defendants Janda and Hugie, the only remaining Defendants in this action. (ECF No. 56.) Both seek summary judgment on count one contending: (1) there is no evidence they were personally involved in the alleged violations, (2) Plaintiff has not alleged a sufficiently serious deprivation of basic human needs to establish an Eighth Amendment violation, and (3) the claim is barred by the favorable termination requirement of *Heck v. Humphrey*, 512 U.S. 477 (1994) (if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.") (*Id*. at 6-9.) Defendant Janda alone moves for summary judgment on count two, contending there are no allegations he personally participated in the alleged constitutional violation and cannot be held liable in his supervisory capacity. (*Id*. at 9.) Plaintiff has filed an Opposition. (ECF No. 58.)

For the following reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.[2] This action will proceed on the only remaining count against the only remaining Defendant, count two against Defendant Hugie.

I.     **Procedural Background**

Plaintiff initiated this action by filing a Complaint on February 4, 2015, naming four Centinela employees as Defendants, Warden Miller, Deputy Warden Janda, and

---

[2] Although this matter was randomly referred to United States Magistrate Judge Ruben B. Brooks pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument is necessary for the disposition of this matter. *See* S.D. Cal. Civ.L.R. 72.1(d).

Correctional Officers Premdas and Hugie. (ECF No. 1.) Plaintiff filed the FAC, the operative pleading in this action, on July 24, 2017, naming the same Defendants. (ECF No. 22.) On August 7, 2018, the Court dismissed all claims against Defendants Miller and Premdas, leaving only Janda and Hugie as Defendants. (ECF No. 44.)

Defendants Janda and Hugie filed the instant Motion for Summary Judgment on August 12, 2019. (ECF No. 56.) Plaintiff filed an Opposition on September 5, 2019. (ECF No. 58.) Defendants have not filed a Reply.

## II. Plaintiff's Allegations

Plaintiff alleges that on March 25, 2013, during a search of his cell, marijuana was found in clothing left by another inmate in the area above his bunk. (ECF No. 22 at 3.) He claims the marijuana belonged to an inmate who was housed in his cell in violation of a CDCR policy precluding general population inmates such as himself from being housed with "unclassified transitional inmates," and, due to routine negligent violations of that policy at Centinela, his cell "had been a revolving door for unclassified transitional [inmates], the most recent of which departed just days prior to the search." (*Id*. at 3-4.) As a result of the discovery of the marijuana, Plaintiff was placed in administrative segregation while the matter was investigated, where the conditions of confinement were by definition cruel and unusual because his placement there was unwarranted. (*Id*. at 4, 20.) Although he was initially charged with drug trafficking, the District Attorney declined to prosecute that charge and he was found guilty of possession of marijuana at a prison administrative disciplinary hearing. (*Id*. at 5, 22; ECF No. 56-2 at 7-8.) He was released back into the general population on July 25, 2013 after four months in administrative segregation, and was assessed a forfeiture of 121 days of good-time credits, a 90-day loss of visitation privileges followed by 90-days of non-contact visitation, a 30-day loss of afternoon yard privileges, and one year of random drug testing and substance abuse education programming. (*Id*.)

Plaintiff alleges that upon his release into the general population he "immediately felt tension" from other inmates and was approached by several inmates "who told him he

3

15cv0228-WQH (RBB)

1  had been labeled a 'snitch' by staff due to his 602 appeal on the drug possession charge." (ECF No. 22 at 5.) He states his "last cellmate confronted him on the recreation yard and said he'd been told (by staff) that Plaintiff tried to pin the marijuana charge on him." (*Id*.) Plaintiff alleges Defendant Hugie spread rumors he was a snitch in retaliation for having filed inmate grievances exposing the unlawful housing policy and challenging his disciplinary proceeding. (*Id*.) When Plaintiff and another inmate asked Defendant Hugie "what was the deal with him spreading false rumors," Defendant Hugie allegedly replied: "It came from high up." (*Id*.) Plaintiff alleges that about a year later he was placed in a cell with a "documented informant," was asked by other inmates to physically harm his new cellmate in order to clear his own reputation, and after he refused to do so he was attacked by other inmates on the recreation yard and suffered a head injury. (*Id*. at 6.) He claims the attack was the direct result of the slanderous, malicious, vindictive and sadistic behavior of Defendant Hugie and Centinela staff. (*Id*.)

Plaintiff alleges Defendant Janda, through his position of Deputy Warden, "was in charge of the supervision and discipline of all correction staff at Centinela State Prison. All infractions of professional and ethical conduct is a reflection of their training and his supervisory duties." (*Id*. at 2.) He alleges the housing policy at Centinela was "authorized by the warden and her staff . . . thus making CRCD [and] Centinela State Prison in particular liable for the violation." (*Id*. at 4.)

## III.   Discussion

Both Defendants seek summary judgment on count one on the basis that: (1) there are no allegations they were personally involved in the housing classification decisions or policies, (2) there are no allegations of objectively inhumane prison conditions necessary to support an Eighth Amendment claim, and (3) the claim is barred by *Heck* because success would necessarily invalidate the prison disciplinary finding of possession of marijuana and loss of 121 days of good-time credits. (ECF No. 56 at 6-9.) Defendant Janda alone seeks summary judgment on count two, contending there are no allegations he was personally involved in the alleged constitutional violations. (*Id*. at 9.)

**A. Legal Standards**

Defendants are entitled to summary judgment if they demonstrate "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing summary judgment is proper "by showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In order to avoid summary judgment, the nonmovant must present "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Court may not weigh evidence or make credibility determinations, and any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Id*. at 255. The nonmovant's evidence need only be such that a "jury might return a verdict in his favor." *Id*. at 257.

**B. Count One**

In count one Plaintiff seeks to hold Defendants Janda and Hugie liable under the Cruel and Unusual Punishments Clause of the Eighth Amendment as a result of a housing policy at Centinela and which permitted a transitional inmate to be housed in his cell in violation of a CDCR policy who left marijuana in the cell which Plaintiff was charged with possessing. As a result, Plaintiff spent four months in administrative segregation and was found guilty of possession of marijuana, which resulted in the forfeiture of 121 days behavioral credits, a loss of visitation privileges for 90 days followed by non-contact visits for 90 days, a loss of afternoon yard privileges for 30 days, and one year of random drug testing and substance abuse education programs.

The allegations specific to Defendant Janda in the FAC are: "In his position of dep. warden, he was in charge of the supervision and discipline of all correction staff at Centinela State Prison. All infractions of professional and ethical conduct is a reflection of their training and his supervisory duties." (ECF No. 22 at 2.) Plaintiff alleges the housing policy at Centinela, which caused him to be convicted of possession of marijuana belonging to another inmate, was "authorized by the warden and her staff . . . thus making CRCD [and] Centinela State Prison in particular liable for the violation." (*Id*. at 4.) There are no specific allegations in the verified FAC of Defendant Hugie's involvement in the housing policy in this respect, other than the general reference to Centinela staff.

Plaintiff's FAC and Opposition are signed under penalty of perjury. (*Id.* at 37; ECF No. 58 at 5.) To the extent the allegations contained therein are within his personal knowledge they are treated as affidavits in opposition to the summary judgment motion. *Schroeder v. McDonald*, 55 F.3d 454, 460 & nn. 10-11 (9th Cir. 1995); *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) ("[B]ecause Jones is pro se, we must consider as evidence in his opposition to summary judgment all of Jones's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where Jones attested under penalty of perjury that the contents of the motions or pleadings are true and correct.")

Both Defendants argue summary judgment is appropriate because: (1) there are no allegations they were personally involved in the housing classification decisions or policies, (2) there are no allegations of objectively inhumane prison conditions necessary to support an Eighth Amendment claim, and (3) success would necessarily invalidate the prison disciplinary finding of possession of marijuana which was accompanied by a loss of 121 days of good-time credits, and the claim is therefore barred by *Heck v. Humphrey*. (ECF No. 56 at 6-9.) In his Opposition, Plaintiff contends Defendants Janda and Hugie were personally involved in the decision to initiate disciplinary proceedings for possession of marijuana after the District Attorney decided not to file criminal charges for drug trafficking. (ECF No. 58 at 3-4.) He does not address the *Heck* issue or the lack of

allegations that the conditions of confinement in administrative segregation or otherwise as a result of the housing policy were cruel and unusual.

The Eighth Amendment's cruel and unusual punishments clause, when applied to a conditions of confinement claim, involves a subjective and an objective prong. *Wilson v. Seiter*, 501 U.S. 294, 296-302 (1991). As to the objective prong, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 298, quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1991). The subjective prong requires showing "deliberate indifference," that is, that the defendants were acting "maliciously and sadistically for the very purpose of causing harm." *Id.* at 302, quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) and *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (holding that in order to establish deliberate indifference, a plaintiff must point to evidence in the record from which a trier of fact might reasonably conclude that he was placed at risk of "objectively, sufficiently serious" harm, and that a prison official had a "sufficiently culpable state of mind."), quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

There is no genuine issue of material fact in dispute with respect to the objective prong of an Eighth Amendment violation with respect to count one because Plaintiff has failed to describe the conditions in administrative segregation and how or if they differed from the conditions in general population. His reliance on the allegation in the FAC that his placement in administrative segregation was cruel and unusual because it was unwarranted is insufficient to satisfy the objective prong of an Eighth Amendment violation. *See Farmer*, 511 U.S. at 834 (holding that in order to state an Eighth Amendment claim for unconstitutional conditions of confinement, a prisoner must allege objectively "sufficiently serious" deprivations resulting in the denial of "the minimal civilized measure of life's necessities" which pose a serious risk of harm); *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995) ("[A]dministrative segregation, even in a single cell for twenty-three hours a day, is within the terms of confinement ordinarily contemplated by a

sentence."); *Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982) ("The Eighth Amendment standards for conditions in isolation, segregation, and protective custody cells are no different from standards applying to the general population."), overruled on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995) (holding that conditions of confinement in disciplinary confinement, even where harsher than administrative segregation, do not implicate liberty interests protected by federal due process unless they impose atypical and significant hardships on an inmate in relation to the ordinary incidents of prison life).

Accordingly, with respect to the element requiring Plaintiff to show the conditions of confinement in administrative segregation, or any other conditions he was subjected to as a result of the Defendants' alleged actions in count one with respect to enforcing the housing policy, were sufficiently grave so as to deny him "the minimal civilized measure of life's necessities," he has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322; *Anderson*, 477 U.S. at 255.

Furthermore, even if Plaintiff could make such a showing, both Defendants are still entitled to summary judgment because success on count one would necessarily call into question the validity of the guilty finding for possession of marijuana and the resultant loss of custody credits. "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 486-87. A civil rights claim challenging the legality of a conviction or the length of confinement that has not been so invalidated is not cognizable under 42 U.S.C. § 1983. *Id*. at 487; *see Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (extending *Heck* to a claim challenging procedural defects in prison disciplinary proceedings resulting in loss of good-time credits).

On August 28, 2013, Plaintiff was issued a Rules Violation Report charging him with distribution of a controlled substance. (ECF No. 56-2 at 6-8.) That report contains the following statement by Correctional Officer J. Truchanovicz:

> On Wednesday, August 28, 2013, Centinela State prison received written notification from Department of Justice (DOJ) indicating the suspected controlled substance recovered from Inmate McKinley C94117 by Correctional Officer J. Truchanovicz on March 25, 2013, tested Positive for Marijuana. The circumstances are as follows: On Monday, March 25, 2013, at approximately 0800 hours, the investigative Services Unit was assigned to conduct random cell searches on Facility B, Housing Unit #3. I conducted a search in cell 220. Inmate McKinley C94117, B3-220L, is the only inmate currently assigned to cell B3-220. At approximately 0820 hours, I discovered (1) black latex bindle secreted inside of the groin area from a pair of blue State issued pants that were hanging from a homemade clothes line at the end of the upper bunk. I unwrapped the black latex bindle and discovered (2) individual clear bindles as JT-01 and JT-02. Utilizing Sony camera DSC-W180, I took a photographs [sic] of the bindles, call and identification card of McKinley C94117 inside of cell B3-220. I confiscated the bindles, placed them inside of my left cargo pocket and continued to search. No additional contraband was discovered inside of cell B3-220. I returned to the Investigative Services Unit to process the bindles that were discovered inside of cell B3-220. I returned to the Investigative Services Unit to process the bindles that were discovered inside of cell B3-220. I created a placard containing the information pertaining to this incident. Utilizing a CJ600 scale, I weighed bindles JT-01 and JT-02, which recorded the following weights: JT-01 = 0.4 gg., JT-02 = 0.4 gg. Utilizing a "VALTOX" drug identification test kit, I conducted a field test of the contence [sic] of JT-01 and JT-02. At approximately 1135 hours, the the [sic] contents of JT-01 tested presumptive positive for Marijuana. At approximately 1146 hours, the contents of JT-02 tested presumptive positive for Marijuana. Utilizing Sony camera DSCW55, I photographed JT-01 and JT-02, and the testing procedure/results. Upon completion of the testing procedures, I placed all of the contraband back inside of an evidence envelope and secured it into ISU evidence locker #2. At approximately 1250 hours, I uploaded the photographs from Sony camera DSO-W180, into the ISU archive computer. Inmate McKinley is aware of this report. Inmate McKinley is not a participant in the Mental Health Services Delivery System at the CCCMS/EOP/MHCB Level of care.

(*Id*. at 3-4.)

///

Plaintiff pleaded not guilty at a September 7, 2013 disciplinary hearing, where he stated: "I had no knowledge of it. I watched at the door as they 'hit' other cells, if I had known it was there I had plenty of time to do what I had to do." (*Id*. at 3, 7.) The District Attorney declined to criminally prosecute the drug trafficking charge, and Plaintiff was found guilty of a lesser included serious rules violation of possession of a controlled substance, marijuana. (*Id*. at 7.) He was assessed a forfeiture of 121 days behavioral credits, a loss of visitation privileges for 90 days followed by non-contact visits for 90 days, a loss of afternoon yard privileges for 30 days, and was required to submit to random drug testing at least once per month for a year and attend substance abuse education programs. (*Id*. at 8.)

Plaintiff's defense to the charge was that he did not know the marijuana was in his cell because it had been left there without his knowledge by an inmate who had been improperly screened and placed in his cell pursuant to an illegal or negligently administered housing policy. Assuming Plaintiff could show the Defendants were personally involved in implementing a policy that violated his Eighth Amendment rights by causing him to be found guilty of possession of marijuana belonging to the inmate who would not have been placed in his cell but for that violation, he would necessarily demonstrate that his conviction for possession of marijuana and the resultant loss of 121 days of custody credits is void as obtained in violation of the Eighth Amendment. *See Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003) ("[T]he applicability of the favorable termination rule turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement.")

Based on the forgoing, the Court **GRANTS** summary judgment to Defendants Janda and Hugie on count one.

**C. Count Two**

Plaintiff alleges in count two that his Eighth Amendment right to be free from cruel and unusual punishment and his First Amendment right to petition for redress of grievances

10

15cv0228-WQH (RBB)

were violated when he was assaulted by other inmates after prison staff falsely labeled him a "snitch" in retaliation for filing inmate grievances challenging the housing policy and his disciplinary proceeding. (ECF No. 22 at 5-6.) Defendant Hugie does not seek summary judgment on this claim. Defendant Janda argues he cannot be held liable in a supervisory capacity merely for failing to properly supervise Defendant Hugie. (ECF No. 56 at 9.)

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff alleges he and another inmate, A. Adams, asked Defendant Hugie on August 17, 2013, "what was the deal with him spreading false rumors on [Plaintiff]," to which Defendant Hugie responded: "It came from high up." (*Id*. at 5.) Plaintiff alleges that after his release back into general population he "received hard looks and intimidating stares from [inmates] and staff daily." (*Id*.) He states that he met with "mental health staff" at the prison, informed them of his situation and asked to be placed in a single cell, but "was denied accommodation by mental health staff and custodial staff proved to be even more unsympathetic to his safety and welfare." (*Id* at 5-6.) About a year later he was assigned a new cellmate who "was a 'documented informant' according to prison yard rumor." (*Id*. at 6.) Plaintiff states that:

> While on the recreation yard shortly after the move, Plaintiff overheard a conversation between two other [inmates]. It was said that since "[Plaintiff]'s name had smut on it, let him get it right by handling it." "It" being causing physical harm to his new cellmate. When the so-called "order" came to carry out the "hit," Plaintiff refused. Soon thereafter, Plaintiff was physically attacked on the recreation yard. He suffered a concussion and was left unconscious, face down on the yard. Since the attack, Plaintiff's mental acuity

has lessened severely. He suffers memory loss and has difficulty retaining information . . . [as] a direct result of the head injury. The attack and the resulting loss of mental acuity is the culmination of the malicious and vindictive rumor spreading carried out by the administration, namely C/O's Hugie and Premdas, ordered from "high up." The effects of this slanderous and sadistic behavior was calculated to bring about harm to the Plaintiff. The administration's goal was achieved with great success, because Plaintiff suffers to this day because of their actions. C/O's Hugie and Premdas are directly liable for Plaintiff's injuries.[3]

(*Id.*)

Plaintiff alleges Defendant Hugie personally participated in retaliating against him for complaining of the housing policy and filing inmate grievances by spreading rumors he was a snitch which eventually led to him being assaulted by other inmates. Defendant Hugie does not seek summary judgment on this claim. Plaintiff alleges Defendant Janda failed to properly supervise Defendant Hugie and failed in his duty to prevent Plaintiff from being housed in violation of the CDCR policy which ultimately resulted in the constitutional violation. Defendant Janda argues he cannot be held liable in a supervisory capacity for failing to properly supervise Defendant Hugie. (ECF No. 56 at 9.)

There is no respondeat superior liability under § 1983, and a supervisor may be held liable for the constitutional violations of his subordinates only if he "participated in or directed the violations or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). A person deprives another of a constitutional right under § 1983 where that person "'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

To the extent Plaintiff seeks to hold Defendant Janda liable as Defendant Hugie's supervisor, and for no other reason, there is no material fact in dispute with respect to the element of a claim that Defendant Janda was personally involved in the alleged deprivation

---

[3] Defendant Premdas was dismissed without prejudice for lack of service. (ECF No. 44.)

of Plaintiff's rights in his supervisory capacity. In this respect, Plaintiff has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322; *Anderson*, 477 U.S. at 255; *Taylor*, 880 F.2d at 1045.

Plaintiff also alleges Defendant Janda failed in his duty to prevent him from being housed in violation of the CDCR policy. There are no allegations regarding what "duty" Defendant Janda had with respect to the implementation of the housing policy at Centinela, and whether it was a supervisory duty. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Thus, the allegations that Defendant Hugie told Plaintiff that the order to label him a "snitch" came from "high up" and Defendant Janda had a duty as Defendant Hugie's supervisor to prevent that from happening, are insufficient under a respondeat superior liability theory to demonstrate direct participation in the alleged constitutional violation.

However, the "requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Duffy*, 588 F.2d at 743-44. To the extent the FAC can be read to allege Defendant Janda was the person "high up" or one of the people "high up" who had allegedly given the order to label Plaintiff a "snitch," Plaintiff has not alleged he has personal knowledge Defendant Janda is that person, nor identified any evidence Defendant Janda is that person. Although any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255, Plaintiff has presented no evidence from which an inference could reasonably be drawn that Defendant Janda is one of the "high up" persons referred to by Defendant Hugie. *Id*. at 251 ("[B]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the

*onus* of proof is imposed.") Rather, the FAC relies on Defendant Janda's supervisory position for such a proposition, and Plaintiff has failed to present "specific facts showing that there is a genuine issue for trial" regarding personal participation by Defendant Janda. *Id*. at 256; *Barren*, 152 F.3d at 1194 ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."); *Farmer*, 511 U.S. at 837 (holding defendant must "know of and disregard an excessive risk to inmate health or safety.")

Defendant Janda is entitled to summary judgment on count two because, with respect to the element of personal participation in the alleged violations of the First and Eighth Amendments, Plaintiff has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322; *Anderson*, 477 U.S. at 255. Accordingly, the Court **GRANTS** Defendant Janda's motion for summary judgment with respect to count two.

**IV. Conclusion and Order**

Based on the foregoing, **IT IS ORDERED** that:

Defendant's Motion for summary judgment (ECF No. 56) is **GRANTED**.

This action will proceed on the only remaining count against the only remaining defendant, count two of the First Amended Complaint against Defendant B. Hugie.

**IT IS SO ORDERED.**

Dated: October 30, 2019

Hon. William Q. Hayes
United States District Court